UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| United States of America<br>     Plaintiff,<br><br>v.<br><br>Elijah Melton,<br>     Defendant. | )<br>)<br>)<br>)<br>)  No. 1:24-cr-00059-JJM-AEM-1<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

AMY E. MOSES, United States Magistrate Judge.

This matter came before the Court via a Status Report submitted by Defendant Elijah Melton, notifying the Court that Mr. Melton's counsel, Beau B. Brindley, had been disqualified from representing Mr. Melton in a currently pending case in the District of Massachusetts. ECF No. 67. The Report attached Judge Sorokin's opinion from the District of Massachusetts regarding the disqualification. ECF No. 67-1. Based on that Status Report, Chief Judge McConnell instructed the parties to show cause why Attorney Brindley should not be disqualified from representing Mr. Melton in this case. Text Order (Aug. 18, 2025). Attorney Brindley and the Government each filed a response (ECF Nos. 68, 71) and Attorney Brindley filed a reply (ECF No. 73). The issue of disqualification was then referred to me for determination. Text Order (Oct. 3, 2025). After hearing, I find that Attorney Brindley's representation does create a conflict of interest, but that the conflict can be waived.

    **I.    BACKGROUND**

Mr. Melton has three pending federal cases. In December 2023, he was charged via superseding indictment in the District of Massachusetts with conspiracy to distribute and to possess

with intent to distribute 400 grams or more of fentanyl (hereinafter *Melton I*). *United States v. Fonseca*, 1:22-cr-10356-LTS (D. Mass. Dec. 6, 2023), ECF No. 52. In June 2024, he was indicted in this District for conspiracy to commit murder, solicitation to commit a crime, and conspiracy to tamper with a witness, victim, or informant by killing or attempting to kill (hereinafter *Melton II*). ECF No. 1. Finally, in April 2025, he was charged via complaint in a second case in the District of Massachusetts with conspiracy to distribute and to possess with intent to distribute fentanyl and cocaine (hereinafter *Melton III*). *United States v. Richards*, 1:25-cr-10288-LTS (D. Mass. Apr. 23, 2025), ECF No. 4.

### A. Relevant Factual Background

In December 2022, Samuel Fonseca, Mr. Melton's co-defendant in *Melton I*, was arrested in Massachusetts while allegedly on his way to deliver fentanyl at Mr. Melton's behest and charged via complaint that same day. ECF No. 67-1 at 2. Mr. Melton was not charged for his alleged role in this conspiracy until December 2023. *Melton I*, ECF No. 52. When Mr. Melton was arrested on the charges, investigators seized three cell phones. ECF No. 67-1 at 3. A search of these phones revealed communications between Mr. Melton and an individual named Theodore Richards[1] between September and December 2023 about shipping cocaine, fentanyl, and marijuana for distribution in Massachusetts. *Id.* When the arrest warrant issued for Mr. Melton in *Melton I* in December 2023, he was in California to attend a party thrown by Mr. Richards. *Melton I*, ECF No. 183-1 ¶¶ 21, 25-28.

Mr. Melton was briefly detained in *Melton I* but ultimately released on bond and pretrial conditions after a detention hearing. *Melton I*, ECF Nos. 61, 69. In February 2024, Mr. Melton's

---

[1] Mr. Richards communicated with Mr. Melton using the name "James Jackson," but investigators allege—and Judge Sorokin found by a preponderance of the evidence—that James Jackson is in fact Mr. Richards. ECF No. 67-1 at 10; *Melton I*, ECF No. 183-1 ¶¶ 12-28.

2

bond was revoked based on violations of his release conditions and he was detained pending trial at the Wyatt Detention Center in Rhode Island. *Melton I*, ECF No. 91, 112. Between March and April 2024, while detained at Wyatt, Mr. Melton allegedly communicated with an individual named Kareem Pires to arrange for the murder of three individuals involved in *Melton I*—a cooperating witness and two Assistant United States Attorneys working on the case. ECF No. 67-1 at 10. Mr. Pires was present with Mr. Melton at Mr. Richards' December 2023 party in California. *Melton I*, ECF No. 183-1 ¶ 26. In June 2024, Messrs. Melton and Pires were indicted for the murder-for-hire scheme as co-defendants in *Melton II*, the case now before this Court. ECF No. 1.

In April 2025, a complaint issued against Messrs. Melton and Richards in *Melton III* for drug charges, based in part on the September-December 2023 communications found on Mr. Melton's phone after his arrest in *Melton I*. *Melton III*, ECF No. 4.

Of note, in December 2025, Mr. Pires filed a signed plea agreement in *Melton II*. ECF No. 76. The plea agreement indicates that in exchange for his guilty plea, the Government will not bring conspiracy to distribute charges against Mr. Pires in Massachusetts relating to Mr. Pires' "narcotics trafficking with Elijah Melton and Theodore Richards in [*Melton III*]." *Id.*

### B. Background of Attorney Brindley's Involvement

As summarized in Judge Sorokin's order on Attorney Brindley's disqualification in *Melton I*, the history of Attorney Brindley's involvement with the defendants in these cases began in 2013. ECF No. 67-1 at 2. Attorney Brindley is a criminal lawyer based in Chicago who represented Mr. Richards in a 2013 appeal of a substantial federal drug conviction in the Northern District of Illinois. *Id.* The Seventh Circuit remanded Mr. Richards' case and Attorney Brindley represented Mr. Richards in the subsequent retrial, which ultimately ended in acquittal. *Id.*

It is not clear from the record how Messrs. Melton and Richards met and began communicating, but September and October 2023 messages between the two include references to Mr. Richards' work with a law firm in Chicago. *Melton I*, ECF No. 183-1 ¶¶ 15-16. For example, on October 21, 2023, Mr. Richards stated: "Another thing to I want you to know this my drivers . . . are tight you never have to worry about anything ever everybody has my lawyer and we never talk. We never cooperate. We know the law!!!!!" *Id.* ¶ 16. On October 24, 2023, Mr. Richards wrote: "I've been to the Feds twice I have 14 years total Fed time under my belt" and "I work closely with a law firm out of Chicago, so please tap my knowledge I've done enough Fed time for the both of us if you pay attention and listen to me, you're not going to ever have to do any!!!!!" *Id.* ¶ 15.

At his initial appearance in *Melton I* in December 2023, Mr. Melton was appointed counsel. *Melton I*, ECF No. 61. On February 16, 2024, Mr. Melton filed a motion to substitute Attorney Brindley as his counsel. *Melton I*, ECF No. 84. The Court allowed the motion and Attorney Brindley entered his appearance for Mr. Melton. *Melton I*, ECF Nos. 85, 97. In his decision, Judge Sorokin inferred based on the texts between Messrs. Richards and Melton, and the fact that Attorney Brindley has never entered an appearance in Massachusetts before *Melton I*, that Mr. Richards referred Mr. Melton to Attorney Brindley. ECF No. 67-1 at 7.

In March 2024, after his pretrial release was revoked in *Melton I*, Mr. Melton wrote a letter to Mr. Pires expressing frustration with Attorney Brindley's representation, stating: "tell unc I said for this n[*****] to put them f[***]ing motions in, DA said 30 yrs for this" and "Tell my peoples too I said no more $ for lawyer until he starts doing shit n[****] just came on docket day I had court been gave him that 2 month before." ECF No. 67-1 at 8. The letter also referenced the

4

payment of various sums of money to "unc." *Id.* Judge Sorokin found that "unc" refers to Mr. Richards and "lawyer" refers to Attorney Brindley. *Id.*

In June 2024, Messrs. Melton and Pires were indicted in this case, *Melton II*, for conspiring to arrange the murder of three individuals involved in *Melton I*. ECF No. 1. On July 8, 2024, Attorney Brindley entered his appearance on Mr. Melton's behalf in this case. ECF No. 10. At that point, he represented Mr. Melton in both cases pending against him—*Melton I* in Massachusetts and *Melton II* in Rhode Island. In April 2025, however, when Messrs. Melton and Richards were charged in *Melton III*, Attorney Brindley entered his appearance on behalf of Mr. Richards in the Northern District of Illinois, where he was arrested. ECF No. 67-1 at 11. Mr. Melton appeared at his initial appearance in Massachusetts in *Melton III* without counsel, and the Court provisionally appointed Keith S. Halpern as Mr. Melton's attorney pursuant to the Criminal Justice Act. *Melton III*, Dkt. Entry (July 11, 2025). Attorney Halpern has continued to represent Mr. Melton in *Melton III*.

### C. Disqualification Proceedings before Judge Sorokin

On May 16, 2025, the Government filed a Motion for Hearing on Potential Conflicts of Interest in *Melton I* and *Melton III*, seeking to disqualify Attorney Brindley from representing Mr. Melton in *Melton I* based on his representation of Mr. Richards in *Melton III*. *Melton I*, ECF No. 183; *Melton III*, ECF No. 11. After extensive briefing and multiple hearings, Judge Sorokin issued a decision finding that Attorney Brindley's simultaneous representation of Messrs. Melton and Richards in the two Massachusetts cases creates a serious potential of an unwaivable conflict of interest for Mr. Melton and thus disqualified Attorney Brindley from representing Mr. Melton in *Melton I*. ECF No. 67-1 at 17.

Judge Sorokin reached this conclusion for three reasons: (1) questions about Attorney Brindley's credibility, based both on his conduct around the waiver issue in *Melton I* as well as a documented history of issues with candor to the tribunal and prior disqualifications on conflict grounds (i*d.* at 18-19); (2) the lengthy history between Mr. Richards and Attorney Brindley and the ensuing concern that his "overriding loyalty" will be to Mr. Richards and will create "a significant risk of limiting his ability to effectively and vigorously represent Melton" (*id.* at 20-23); and (3) concerns about whether Attorney Brindley could provide full and impartial advice about whether Mr. Melton should plea or cooperate in *Melton I*, when such a decision would at worst, likely be conditioned upon the possibility of testifying against Mr. Richards in *Melton III*, and at best, implicate potentially differing interests or strategic preferences between Messrs. Melton and Richards in *Melton III* (*id.* at 24-27). Judge Sorokin ultimately concluded that based on the totality of the circumstances, "Attorney Brindley cannot constitutionally and ethically represent Melton in [*Melton I*] and no waiver or colloquy responses from Melton can avoid this result." *Id.* at 27. Following Mr. Brindley's disqualification, Attorney Halpern was appointed to represent Mr. Melton in *Melton I* and thus now represents him in both Massachusetts cases.

The Government's May 16, 2025 Motion for Hearing on Potential Conflicts of Interest also challenged Attorney Brindley's representation of Mr. Richards in *Melton III* on the same grounds. *Melton III*, ECF No. 11. In that case, Judge Sorokin decided that the strongest basis for disqualifying Attorney Brindley as Mr. Melton's attorney in *Melton I*—his "longstanding and overriding loyalty" to Mr. Richards—has no impact on Attorney Brindley's representation of Mr. Richards in *Melton III*, because nothing suggested his efforts on Mr. Richards' behalf would be impacted by his much less robust history with Mr. Melton. *Melton III,* ECF No. 57 at 4-5. He also noted that Mr. Richards is facing only one criminal case, so his decisions about cooperation

6

or plea are much less complicated than Mr. Melton's and far less likely to create conflicts of interest. *Id.* at 5-6. Judge Sorokin also stated that the Court will remain alert to any developments that give rise to additional concerns, and he is confident that Mr. Melton's independent counsel in *Melton I*—appointed permanently following Attorney Brindley's disqualification—will bring any concerns to the Court's immediate attention. *Id.* at 6. In a footnote in his decision regarding Brindley's representation of Richards, Judge Sorokin described the interplay between the Massachusetts cases and Melton's case in Rhode Island:

> The Court notes that Melton remains Brindley's *current* client. Though he no longer represents Melton in this Court due to the Disqualification Order in *Melton I*, as of the time of this decision he remains Melton's lawyer in *Melton II*. That matter involves a different type of charges and is pending in a different District Court. Any conflicts present in *Melton II* as to Melton are not for this Court to evaluate. Moreover, the record now before the Court does not suggest Brindley's involvement in *Melton II* has a meaningful impact on the potential conflicts of interest in this case.

*Id.* at 4 fn. 1.

In conclusion, at this point, Attorney Brindley represents Mr. Melton in *Melton II* before this Court, and Mr. Richards in *Melton III* in Massachusetts. It is this dual representation that is now being challenged in *Melton II*.

## II.    DISCUSSION

### A.  Legal Standard

Judge Sorokin concisely summarized the important constitutional rights implicated by the questions in these cases:

> The Sixth Amendment to the United States Constitution guarantees to each criminal defendant "the Assistance of Counsel for his defense." U.S. Const. amend. VI. This includes "the right to select and be represented by one's preferred attorney." *Wheat v. United States*, 486 U.S. 153, 159 (1988). However, this right is not absolute. "The essential aim of the Sixth Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Id.* (citation modified). Therefore, a defendant's right to choose his own attorney may be limited where there is a "realistic potential for a conflict

of interest," such that the defendant's chosen attorney may be unable to render effective assistance of counsel. *United States v. Laureano-Perez*, 797 F.3d 45, 56 (1st Cir. 2015). ECF No. 67-1 at 14.

The Rhode Island Rules of Professional Conduct govern the conflicts issue in this case and provide further ethical requirements for attorneys practicing before this Court. LR Gen 208. Pursuant to these Rules, a concurrent conflict of interest exists if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." R.I. R. Prof'l Conduct 1.7(a)(2).

If a concurrent conflict of interest exists, a lawyer may represent the client only if: (1) "the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;" (2) "the representation is not prohibited by law;" (3) "the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal;" and (4) "each affected client gives informed consent, confirmed in writing." R.I. R. Prof'l Conduct 1.7(b). Thus, "[i]f a conflict arises after representation has been undertaken, the lawyer ordinarily must withdraw from the representation, unless the lawyer has obtained the informed consent of the client" required by Rule 1.7(b). R.I. R. Prof'l Conduct 1.7, cmt. 4.

Informed consent "denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." R.I. R. Prof'l Conduct 1.0(e). A client may revoke the consent and terminate the lawyer's representation at any time. R.I. R. Prof'l Conduct 1.7, cmt. 20.

If the circumstances laid out in Rule 1.7(b) are not met, then the conflict is deemed unwaivable, and the attorney must be disqualified. This determination requires careful balancing of "the party's right to choose its counsel against the need to protect the integrity of the judicial process." *Haffenreffer v. Coleman*, C.A. No. 06-299T, 2007 WL 2972575, at *2 (D.R.I. Oct. 10, 2007). The Government bears a "heavy burden" of demonstrating that disqualification is necessary, as it should be a "measure of last resort." *In re Grand Jury Proceedings*, 859 F.2d 1021, 1026 (1st Cir. 1988); *see also Gray v. Rhode Island Dep't of Children, Youth & Families*, 937 F. Supp. 153, 156 (D.R.I. 1996) ("[U]nless the underlying judicial process will be tainted by an attorney's conduct, courts should be reluctant to grant disqualification motions.").

### B. The Parties' Arguments

Attorney Brindley argues that because this case involves a different type of charge and is pending in a different Court, Judge Sorokin's reasoning does not support disqualification. ECF No. 68 at 1. He also states there is no risk that evidence potentially implicating Mr. Richards would be presented in this case. *Id.* at 2. Attorney Brindley opines that the only potential conflict in this case would arise if the Government were to reach an agreement with Messrs. Melton or Richards to testify against one another in *Melton III*, though he emphasized both in his briefing and at hearing that Mr. Melton has no desire to plea or cooperate. *Id.* at 5 (quoting a footnote from Judge Sorokin's opinion indicating he found the question of whether Attorney Brindley can adequately advise Mr. Melton on issues of cooperation or plea in *Melton I* "more theoretical than urgent at this time, given Melton's unequivocal statements after consultation with independent counsel that he has no desire to pursue a plea or cooperation."). And, Attorney Brindley argues, even if Mr. Melton decided to cooperate and testify against Mr. Richards in *Melton III*, unconflicted standby counsel could cross-examine Mr. Melton and negate any risk of conflict

9

preventing Attorney Brindley from representing Mr. Melton in this case. *Id.* at 6. He concludes that the Court could and should request a separate written waiver of any potential conflict from Mr. Melton, undertake a colloquy of Mr. Melton to ensure that waiver is made knowingly and voluntarily, and then accept the waiver. *Id.* at 5, 9.

The Government's response largely quotes from Judge Sorokin's opinion in *Melton I* to argue that Attorney Brindley should also be disqualified here. ECF No. 71. The Government states that a plea agreement or cooperation "has not been broached in this current case," but if it were, "it would likely involve information or testimony regarding Richards." *Id.* at 4. The Government also notes Attorney Brindley has a policy against representing defendants who cooperate with the Government, so if Mr. Melton wishes to cooperate, Attorney Brindley would withdraw—thus signaling to Mr. Richards that Mr. Melton is cooperating. *Id.* at 4. The Government concludes that:

> All three pending cases against Melton are directly related and not separate distinctive cases. Facts from *Melton I* will be introduced in this current case, as the allegation is Melton attempted to kill the person who he believed to be the cooperator in *Melton I*, and to kill the original prosecutors in *Melton I*. If Brindley is disqualified in *Melton I*, then he must be disqualified in the current case."

*Id.* at 5.

In reply, Attorney Brindley notes that if facts from *Melton I* are introduced in this case, those facts "will not be ones that involve Mr. Richards even tangentially," a "critical difference that the government ignores." ECF No. 73 at 2. He also states it is "an absurd leap of logic" to conclude that Mr. Richards would automatically assume his withdrawal was because Mr. Melton had opted to cooperate, and if he were to make such an assumption, it would be based on Mr. Melton reversing course and pleading guilty rather than on anything to do with Attorney Brindley. *Id.* at 5-6.

At a hearing on the disqualification issue on January 22, 2026, the Government argued that Attorney Brindley's loyalty to Mr. Richards is now preventing them from engaging in any conversations with Mr. Melton regarding a global resolution of all three of his cases, because such a resolution would implicate Mr. Richards in *Melton III*. The Government reiterated its assertion that all three cases are inextricably related, though later confirmed that there is no evidence that Mr. Richards is in any way involved in the criminal conduct at issue in *Melton I* or *Melton II*. In response, Attorney Brindley noted that Mr. Melton has independent counsel in *Melton I* and *Melton III* with whom the Government can speak about a resolution involving those cases, and that furthermore, Mr. Melton is prepared to state under oath that he will not cooperate or plead guilty in this case or any other. Attorney Brindley argued that there is no risk that this case implicates his representation of Mr. Richards in *Melton III* and that disqualification is not the "least restrictive" path forward.

### C. Analysis

The circumstances present in this case, *Melton II*, do not weigh as heavily in favor of disqualification as they did in *Melton I*. First, unlike in *Melton I*, there is no indication that evidence implicating Mr. Richards would be introduced in this case. *Melton I* and *Melton III* are both drug cases, and the Government is clear in its briefing that it anticipates seeking to admit evidence of Mr. Melton's conduct in *Melton I* to support his electronic communications with Mr. Richards in *Melton III*, and that evidence of Mr. Melton's communications with Mr. Richards in *Melton III* supports the underlying facts of Mr. Melton's role in the drug trafficking conspiracy in *Melton I*. *Melton III*, ECF No. 43 at 7-8; *Melton I*, ECF No. 191 at 9-10. Thus, there was a high likelihood in *Melton I* that Attorney Brindley would be forced to confront evidence harmful

11

to Mr. Richards, and that his overriding loyalty to Mr. Richards would hinder his ability to represent Mr. Melton under such circumstances.

In contrast, this case relates to a murder-for-hire scheme targeting prosecutors and a witness involved in *Melton I*. While it of course stands to reason that evidence from *Melton I* would be introduced in this case, there is nothing in the record to indicate that Mr. Richards is in any way involved in the conduct at issue in *Melton I* or connected to Mr. Melton's co-defendant in that case. The Government confirmed at the hearing that the earliest communications between Messrs. Richards and Melton took place in September 2023—well after the events underlying *Melton I* took place—and that it does not believe evidence implicating Mr. Richards will be introduced in *Melton I*. The Government also affirmed that at this point, there is no evidence that Mr. Richards was in any way involved in the murder-for-hire scheme in this case. Furthermore, the only evidence that the Government believes may be introduced in this case that involves Mr. Richards is the March 2024 letter between Messrs. Melton and Pires that references the exchange of moneys owed and includes language about Attorney Brindley. Attorney Brindley, however, affirmed that nothing in that letter harms Mr. Richards' interests and it does not even refer to him by name; therefore, its introduction as evidence in *Melton II* would not in any way hinder Attorney Brindley's representation of Mr. Melton.

Finally, it does appear that Mr. Pires, Mr. Melton's co-defendant in *Melton II*, knew Mr. Richards and may have been involved in the conduct at issue in *Melton III*. The Government stated at hearing that at this point, it cannot confirm whether evidence from *Melton III*—other than the March 2024 letter between Messrs. Melton and Pires—will be introduced in this case, but Mr. Brindley stated that he sees no risk of the facts of *Melton III* becoming an issue in this case. There is thus nothing before the Court at this time to indicate that Attorney Brindley's overriding

loyalty to Mr. Richards would be in any way implicated or impacted by any evidentiary issues in this case, *Melton II*.

The Court does find, however, that the same risk exists that Attorney Brindley would be unable to provide Mr. Melton with meaningful advice on whether to plea or cooperate in this case if such a decision hinges on Mr. Melton's willingness to testify against Mr. Richards in *Melton III*. The Government has expressed that it would be willing to seek global resolution of Mr. Melton's cases. The Court also notes that Mr. Melton's co-defendant in this case recently filed his intention to plead guilty, though the Government stated at the hearing that it does not believe this plea agreement creates any additional risk of a conflict of interest for Attorney Brindley. However, as discussed at the hearing, Mr. Melton now has independent counsel to advise him on the implication of a plea or cooperation in both *Melton I* and *Melton III*, as such a decision would necessitate the consideration of all three cases. In addition, as acknowledged by Judge Sorokin and reiterated at the hearing for this case, Mr. Melton has stated unequivocally that he does not intend to plea or cooperate, mitigating the potential for this concern to ripen into an actual conflict. The Court is not inclined to infringe upon Mr. Melton's constitutional right to counsel of his choosing based on this potential conflict.

In conclusion, the Court finds that there is a significant risk that Attorney Brindley's responsibilities to Mr. Richards in *Melton III* could materially limit his representation of Mr. Melton in this case, and that a concurrent conflict of interest thus exists. However, at the hearing, Attorney Brindley confirmed that he believes that he will be able to provide competent and diligent representation to each affected client. Given the totality of the circumstances present in this case, the Court concludes that belief is reasonable.

The Court notes that the Rhode Island Rules of Professional Conduct create an ongoing ethical obligation for all attorneys practicing before this Court to raise and address conflicts of interest. To the extent the Government seeks Mr. Melton's cooperation or Mr. Melton changes his mind about cooperation or plea, or there are any other developments that create potential or actual conflicts of interest, those issues must be raised promptly with the Court.

### III.   CONCLUSION

The Court finds that Mr. Melton can waive this conflict. First, he must be advised by independent counsel of the potential and actual conflicts created by Attorney Brindley's representation. Second, Mr. Melton must give his informed consent, confirmed in writing, as required by Rhode Island Rule of Professional Conduct 1.7(b). And third, Mr. Melton must appear before the Court to undergo a colloquy regarding the waiver. If the Court is satisfied that Mr. Melton makes a knowing and voluntary waiver at that time, then Attorney Brindley may continue to represent him in this case.

The Court will appoint independent counsel via a separate order for the limited purpose of advising Mr. Melton on the conflicts issue. If Mr. Melton wishes to proceed with waiving the conflict, then the independent counsel will procure a written waiver signed by Mr. Melton with his informed consent to waive the conflict and continue with Attorney Brindley's representation. If Mr. Melton proceeds with the waiver, then the Court will schedule a hearing to undergo a colloquy with Mr. Melton regarding the waiver. If deemed necessary, the Court may seek Mr. Melton's sworn testimony at that hearing regarding how he plans to proceed.

  /s/   Amy E. Moses
AMY E. MOSES
United States Magistrate Judge

January 27, 2026